# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2024 WY 76

*April Term, A.D. 2024*

**July 17, 2024**

**BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,**

**Petitioner,**

**v.**

**NICK EDWARD BEDUHN, WSB
#6-3763,**

**Respondent.**

D-24-0002

## ORDER OF DISBARMENT

[¶ 1]    **This matter** came before the Court upon the Board of Professional Responsibility's Report and Recommendation for Order of Disbarment, filed herein June 10, 2024, pursuant to Rule 16 of the Wyoming Rules of Disciplinary Procedure.  The Court notes Respondent has not filed an objection to the Board of Professional Responsibility's Report and Recommendation.  The Court, after a careful review of the Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Nick Edward Beduhn should be disbarred.  It is, therefore,

[¶ 2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Order of Disbarment, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶ 3]    **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for Order of Disbarment, Respondent Nick Edward Beduhn shall be, and hereby is, disbarred, retroactive to November 2, 2022, which is the date of this Court entered its Order of Immediate Suspension.  *Bd. of Pro. Resp., Wyoming State Bar v. Beduhn*, 2022 WY 136, 519 P.3d 325 (Wyo. 2022); and it is further

[¶ 4]  **ORDERED** that Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly the requirements found in Rule 21 of those rules.  That rule governs the duties of disbarred and suspended attorneys; and it is further

[¶ 5]  **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Respondent shall pay the Wyoming State Bar the amount of $685.14, which represents the costs incurred in handling this matter, as well as pay administrative fees of $750.00.  Respondent shall pay the total amount of $1,435.14 to the Wyoming State Bar on or before September 1, 2024.  If Respondent fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶ 6]  **ORDERED** that the Clerk of this Court shall docket this Order of Disbarment, along with the incorporated Report and Recommendation for Order of Disbarment, as a matter coming regularly before this Court as a public record; and it is further

[¶ 7]  **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Disbarment, along with the incorporated Report and Recommendation for Order of Disbarment, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶ 8]  **ORDERED** that the Clerk of this Court cause a copy of this Order of Disbarment to be served upon Respondent Nick Edward Beduhn.

[¶ 9]  **DATED** this 17th day of July, 2024.

BY THE COURT:

/s/

**KATE M. FOX**
**Chief Justice**

**BEFORE THE SUPREME COURT
STATE OF WYOMING**

*In the matter of* )     *Docket Nos. 2022-049 and 2022-052*
*NICK EDWARD BEDUHN,* )
*WSB No. 6-3763,* )     **D - 24 - 0002**
 )
   *Respondent.* )

## REPORT AND RECOMMENDATION FOR ORDER OF DISBARMENT

THIS MATTER came before a Hearing Panel of the Board of Professional Responsibility for a Sanction Hearing on April 29, 2024. Hearing Panel members Debra J. Wendtland, John Masterson and Alisha Rohn were present, as were Melinda McCorkle, Deputy Bar Counsel, and Respondent, Nick E. Beduhn. The Hearing Panel, having heard the testimony of witnesses, having received exhibits and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS as follows:

### FINDINGS OF FACT

**I.   Procedural History**

1.    Until November 2, 2022, Nick Beduhn was a private practitioner with an office in Buffalo, Wyoming.

2.    Respondent has been a member of the Wyoming State Bar since his admission in 2003.

3.    On May 10, 2017, an *Order of Immediate Suspension* was issued suspending Respondent "pending final resolution of the formal charges that have been, or will be, filed against him." *Bd. of Prof. Resp. v. Respondent*, 2017 WY 53, ¶ 1, 393 P.3d 903 (Wyo. 2017).

1

4.      On August 24, 2017, Respondent was suspended for two years for violating Rules 1.1, 1.3, 1.4, 1.15, and 1.16 of the Wyoming Rules of Professional Conduct. *See Bd. of Prof. Resp. v. Beduhn,* 2017 WY 97, 402 P.3d 950 (Wyo. 2017). This disciplinary proceeding consolidated five complaints that had been submitted to the Office of Bar Counsel ("OBC"). Respondent failed to answer the Formal Charge; consequently, default was entered and the allegations in the Formal Charge were deemed admitted. Respondent did not contest the entry of default but did appear and represent himself during the sanction hearing.

5.      On November 22, 2017, Respondent was suspended for six months for violating Rules 1.1, 1.3, 1.4, 1.5, and 8.1(b). *Bd. of Prof. Resp. v. Beduhn,* 2017 WY 139, 406 P.3d 1220 (Wyo. 2017). The six-month suspension ran consecutively with the previously issued order of two-year suspension.

6.      After the suspension, Respondent successfully petitioned for reinstatement and was reinstated on January 27, 2021. *Bd. of Prof. Resp. v. Beduhn,* 2021 WY 13, 479 P.3d 753 (Wyo. 2021).

7.      The instant proceeding arises from two Complaints filed against Respondent in 2022 (BPR 2022-049 and BPR 2022-052) and Respondent's failure to respond to requests from the Office of Bar Counsel relating to those two complaints.

8.      On October 13, 2022, Deputy Bar Counsel ("DBC") filed a Petition for Immediate Suspension of Attorney in the Wyoming Supreme Court ("Court") pursuant to Rule 17(a)(1)(B) and (a)(3) of the Wyoming Rules of Disciplinary Procedure. Though Rule 17(b)(2) provides, "Respondent shall have fifteen (15) days from date of service to respond to the petition", Respondent did not file a response.

2

9.     On November 2, 2022, the Court entered an Order of Immediate Suspension, effective immediately.  Respondent has remained under suspension since that date.

10.     On November 10, 2022, DBC filed a Formal Charge in the above-captioned proceeding pursuant to Rule 13, Wyo.R.Disc.Proc.

11.     Pursuant to Rule 14(a), Wyo.R.Disc.Proc., Respondent was required to respond to the Formal Charge within '20 days after service of the Formal Charge. Respondent did not respond within the allotted time.

12.     On December 7, 2022, DBC filed a Motion for Default requesting that the default of Respondent be entered pursuant to Rule 14(b)(1).

13.     On December 9, 2022, default of Respondent was entered for failing to timely answer the Formal Charge pursuant to Rule 14(b)(1).  Thus, the allegations in the Formal Charge were deemed admitted.

14.     A Sanction Hearing was set for April 5, 2023. Due to a severe storm, the hearing was vacated and rescheduled to May 23, 2023. Shortly before the hearing date, Respondent suffered a severe injury.

15.     In late January 2024, the Office of Bar Counsel learned that Respondent was able to proceed with a Sanction Hearing.

16.     Respondent has agreed to stipulate to disbarment.

II.     **Charges Deemed Admitted: Complaint Nos. BPR 2022-049 and BPR 2022-052**

17.     On March 16, 2022, Tonya Middleton filed a Complaint before the Board of Professional Responsibility (BPR 2022-049) against Respondent. Middleton was Respondent's client in a lawsuit he filed in federal court entitled *Higgins, et al v. Memorial*

3

*Hospital of Laramie County (d/b/a Cheyenne Regional Medical Center) and Memorial Hospital of Converse County,* Case No. 0:21-cv-00232-NDF (D. Wyo. 2021). Middleton's Complaint against Respondent alleged the following:

> The Attourney [sic] Nick Respondent and The Free Wyoming 23 group came in to [sic] a meeting with a group of Hospital employees with MHCC, Douglas, WY. They offered advise [sic] on what to do regarding the CMS mandates and that they would take our case. The first filing was submitted on 12/22/2021 which was poorly submitted and looked as though it was not looked over because there were many errors in the documentation [sic]. Mr. Respondent did not continue with the case [sic] He just was "No Show" after the initial submission. Mr. Respondent did not respond or appear with any of our case after the first submission. Several of our people, who are part of this case called, left messages, as well as emailed him with no response what-so-ever. We are now trying to find other representation to pick up our pieces. This is so horrible in that those of us who took the advise [sic] and did exactly what was advised have done their part but now are left with no resolution, no job, and no justice for our fight.

18.     On May 2, 2022, Bradley T. Cave, who represented Defendants in *Higgins,* filed a Complaint before the Board of Professional Responsibility against Respondent for his conduct, or lack thereof, throughout the lawsuit (BPR 2022-052).

19.     Respondent's lawsuit against the hospitals requested "declaratory and injunctive relief from Defendants' refusal and neglectfulness actions to conform and comply with the provisions, requirements and duties set forth of Section 564 of the Food, Drug, and Cosmetic Act ('FDCA'), codified at 21 U.S.C. § 360bbb-3 and the regulations thereof (21 CFR § § 50.20-50.27), which has resulted in many and repeated violations of State and federal law, and of the rights of the Plaintiffs secured by both the State and federal Constitutions."

20.     After the lawsuit was filed, Middleton and the other Plaintiffs had no further contact with Respondent despite repeated calls and emails to him.

21. Respondent took no other action in the case although he did not withdraw as the attorney of record.

22. The lawsuit challenged Defendants' anticipated compliance with the COVID-19 vaccination mandate issued by the Centers for Medicaid and Medicare Services ("CMS").

23. At the time the lawsuit was filed, enforcement of the vaccination mandate was enjoined and the subject of a pending appeal to the United States Supreme Court.

24. On January 13, 2022, the United States Supreme Court issued its opinion regarding this issue. *See Biden v. Missouri,* 142 S. Ct. 647 (2022).

25. Following *Biden v. Missouri,* Cave wrote Respondent a letter detailing concerns with the viability of the *Complaint* and demanding that Respondent voluntarily dismiss the lawsuit. Respondent did not respond to the letter and took no action related to the request to dismiss the lawsuit.

26. On January 31, 2022, Defendants filed a *Motion to Dismiss* the lawsuit pursuant to Fed.R.Civ.Pr. 12.

27. Respondent did not file a response to the *Motion to Dismiss.*

28. On February 4, 2022, Defendants served Respondent with a *Motion for Sanctions* under Fed.R.Civ.Pr. ("*Rule 11 Motion*").

29. Respondent did not communicate with Defendants regarding the *Rule 11 motion* or attempt to amend or dismiss the lawsuit.

30. On February 22, 2022, the Court dismissed the lawsuit without prejudice due to Respondent's failure to respond to the *Motion to Dismiss.*

31. On February 28, 2022, after twenty-one days passed since serving Respondent with the *Rule 11 Motion* (as required by Rule 11(c)(2)), Defendants formally filed their *Motion* with the Court.

32. Respondent did not respond to the *Rule 11 Motion*.

33. On March 18, 2022, the Court issued its *Order to Show Cause Why Sanctions Should Not Be Imposed and Denying Rule 11 Motion* ("*Order to Show Cause*"). The *Order to Show Cause* specified that it could not grant the *Rule 11 Motion* because the *Motion* was filed after the case was dismissed. Nonetheless, the Court stated that some type of sanction may be warranted:

> Plaintiffs filed the complaint on December 22, 2022 [sic]. (Doc. 1). The complaint brought claims on behalf of hospital employees alleging COVID-19 vaccine mandate-related violations-by Defendants Cheyenne Regional Medical Center and Memorial Hospital of Carbon County-of Section 564 of the Food, Drug, and Cosmetic Act (codified at 21 U.S.C. Chapter 9 § 360bbb-3). Yet there is no federal private cause of action for FDCA violations. *See Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 810-812 (1986); 21 U.S.C. Chapter 9 § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.")
>
> On January 25, 2022, counsel for Defendants sent Mr. Beduhn a letter outlining their perceived deficiencies of the complaint as well as pointing to the impact of the January 13, 2022 Supreme Court decision in *Biden v. Missouri,* 142 S.Ct. 647 (2022), which stayed district court injunctions against the November 5, 2021 rule issued by the Secretary of Health requiring that facilities participating in Medicare and Medicaid ensure that their staff are vaccinated against COVID-19. In the letter, Defendants asked Mr. Beduhn to voluntarily dismiss the suit due to their belief that it was without merit. Mr. Beduhn did not respond.
>
> Neither did Mr. Beduhn respond to Defendants' motion to dismiss, nor, surprisingly, to Defendants' motion for Rule 11 sanctions. In fact, Mr. Beduhn has filed nothing in this case since he filed the complaint on December 22, 2021. This has resulted in needless litigation and effort on the part of the Defendants. The Court agrees that the claims in the complaint, styled as they were, were likely without merit. But most important here is Mr. Beduhn's complete inaction in either defending or dismissing the

6

claims in a timely fashion. By not defending the claims in the complaint, Mr. Beduhn all but guaranteed their dismissal; by not voluntarily dismissing them, he forced Defendants to engage in costly motions practice. Absent a valid reason for such inaction, the Court will consider such conduct to have been unreasonable, vexatious and/or in bad faith, and to therefore merit sanctions in the form of assessing Defendants' attorneys' fees against Mr. Beduhn.

\*\*\*

The Court finds that 28 U.S.C. § 1927 is an adequate mechanism for sanctioning Mr. Beduhn's conduct and will thus rely on it rather than the Court's inherent power. Section 1927 "targets the vexatious and unreasonable multiplication of proceedings." *Hamilton v. Boise Cascade Exp.,* 519 F.3d 1197, 1201 (10th Cir. 2008) (quoting *Steinert v. Winn Group, Inc.,* 440 F.3d 1214, 1222 (10th Cir. 2006)). Section 1927 "does not require a finding of bad faith." *Id.* at 1202. While Mr. Beduhn's conduct should not be categorized as exceedingly egregious, § 1927 sanctions "are not reserved for the worst offenders" and may be appropriate "in response to *objectively* unreasonable conduct." *Id.* at 1203 (quoting *Braley v. Campbell,* 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc)). Before imposing a § 1927 sanction, a "court must state with specificity the excess costs providing a basis for the sanctions, the conduct leading to the sanctions, and the reason for the sanction." *Id.* at 1204 (quoting *Sally Beauty Co. v. Beautyco, Inc.,* 372 F.3d 1186, 1190 (10th Cir. 2004) (internal quotations omitted)).

The Court considers Mr. Beduhn's failure to voluntarily dismiss the complaint, coupled with his failure to respond to Defendants' motion to dismiss, to be a vexatious and unreasonable multiplication of proceedings. If he had no intention of defending the claims within the complaint (an intention evinced by his failure to respond), it was unreasonable to not voluntarily dismiss the complaint before Defendants filed their motion-as Mr. Beduhn was surely aware that under Local Rule 7.l(b)(2)(A), "[t]he Court may, in its discretion, consider the failure of a responding party to file a timely response as a confession of the motion." As noted above, Defendants had sent Mr. Beduhn a letter outlining the deficiencies of the complaint and put him on notice that they would be imminently filing a motion to dismiss. By neither voluntarily dismissing the complaint nor defending it, Mr. Beduhn forced the Defendants to incur needless attorneys' fees. Specifically, the excess costs providing a basis for the sanction are those costs, expenses, and attorneys' fees related to the litigation in this case from the motion to dismiss stage
onwards. The Court finds that the costs related to Defendants' motion for Rule 11 sanctions should also be included in the tally, as such motion would have been rendered unnecessary had Mr. Beduhn voluntarily dismissed the case.

7

34. The Court allowed Respondent until March 25, 2022, "to explain why his conduct in this case was not vexatious or unreasonable."

35. Respondent did not respond to the *Order to Show Cause.*

36. On April 1, 2022, Defendants filed their *Bill of Costs* requesting $6,779.00 in attorney fees.

37. Respondent did not respond or object to Defendants' *Bill of Costs.*

38. On April 20, 2022, the Court entered its *Order Awarding Attorneys' Fees and Sanctions.* The Court awarded the fees requested in full ($6,779.00) and ordered Respondent to "personally" pay the Defendants' attorneys' fees.

39. Respondent has not paid any portion of the fees required by the Court.

40. On April 25, 2022, Bar Counsel sent Middleton's Complaint (BPR 2022-049) via certified mail to Respondent with a letter requesting a response to the Complaint by May 16, 2022. The Complaint was received and signed for by Respondent on April 28, 2022.

41. On May 3, 2022, Deputy Bar Counsel sent Cave's Complaint (BPR 2022-052) via certified mail to Respondent with a letter requesting a response to the Complaint by May 24, 2022. The letter noted that the subject matter of BPR 2022-052 was the same as the subject matter of BPR 2022-049, but since the Complainants and potential Rule violations were different, separate responses should be provided for each matter.

42. On May 31, 2022, Respondent requested an extension of time to respond to BPR 2022-049 due to an ailing parent. Respondent stated that he believed the due date was June 6 but had recently discovered that the deadline was May 16.

8

43.    That same day, Deputy Bar Counsel granted an extension to June 6, 2022, to respond to all outstanding matters, which included BPR 2022-052.

44.    On June 3, 2022, the Complaint in BPR 2022-052 was returned to the OBC as unclaimed and unable to forward even though both Complaints were sent to the same address within a week of each other.

45.    On June 3, 2022, Deputy Bar Counsel emailed Respondent regarding BPR 2022-052 since the Complaint had been returned to the OBC:

> As you can see below, I asked for a response to all outstanding matters by June 6. That was meant to encompass the 2022-049 matter *and* the 2022-052 matter. The 052 matter involves the same lawsuit but the complaint was filed by Brad Cave, so the alleged rules violations differ slightly from the 049 matter. My office sent you a letter and copy of the complaint on May 3, 2022. We requested a response by May 24, 2022. In responding to your email below, it was my intention that this matter would be addressed by June 6.
>
> This letter was returned to us today. The envelope reflects that notice was provided on May 6. On May 31, it was returned to sender as unclaimed and unable to forward.
>
> I have attached a copy of the letter and complaint previously sent to you. I am not going to mail another hard copy. Please follow the instructions in the letter and provide me with a response by **Monday, June 13.** Because the underlying factual issues are the same in BPR 2022-049 and 2022-052, I trust this will not be an issue.
>
> Please let me know if you have questions. Please also update your mailing address or ensure that your mail is picked up more timely in the future.

(emphasis in original).

46.    Respondent did not respond to the email.

47.    On July 29, 2022, Deputy Bar Counsel again requested responses to the Complaints:

9

Your responses to outstanding complaints is way overdue. While I sympathize with your personal issues and father's illness, I need responses to the complaints. Please provide responses to all outstanding matters by **Friday, August 5, 2022.** If I do not receive responses by that date, I will file a request for authority to file a formal charge alleging violations of Rule 8.3 [sic] and other violations that I believe I can prove by clear and convincing evidence. The Formal Charge may be amended depending upon the response I receive, if any.

(emphasis in original).

48.    Respondent did not respond to the email.

49.    Respondent's last communication with the OBC regarding BPR 2022-049 was on May 31, 2022, when he requested an extension of one week to respond to the Complaint. Respondent never responded to communications regarding BPR 2022-052.

50.    Bar Counsel maintains that Respondent violated the following Rules of Professional Conduct: 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 3.1 (Meritorious claims and contentions), 3.3 (Candor toward the tribunal), 3.4 (Fairness to opposing counsel), 8.1(b) (Bar admission and disciplinary matters), 8.4(d) (Conduct prejudicial to the administration of justice)

## CONCLUSIONS OF LAW

51.    **W.R.Prof.Cond. 1.1** (Competence) provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

a.    Respondent violated Rule 1.1 by failing to know or understand the prevailing law related to the *Complaint* he filed in *Higgins, et al v. Memorial Hospital of Laramie County (d/b/a Cheyenne Regional Medical Center) and Memorial Hospital of Converse County,* Case No. 0:21-cv-00232-NDF (D. Wyo. 2021). Thus, Respondent did

10

not have the "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

b.     Respondent violated Rule 1.1 by failing to participate in the *Higgins* lawsuit at any point after filing the *Complaint,* and thus lacking the "thoroughness and preparation reasonably necessary for the representation."

52.     **W.R.Prof.Cond. 1.3** (Diligence) provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

a.     Respondent violated Rule 1.3 by failing to diligently or promptly pursue Plaintiffs' interests.

b.     Respondent violated Rule 1.3 by failing to participate in the lawsuit at any point after filing the *Complaint.* Respondent failed to respond to the *Motion to Dismiss* filed in the case or to amend the *Complaint*, resulting in dismissal of the case based solely upon Respondent's failure to respond to the *Motion to Dismiss.*

53.     **W.R.Prof.Cond. 1.4** (Communication) provides in pertinent part:

(a) A lawyer shall:

    (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in 1.0(f), is required by these Rules;
    (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
    (3) keep the client reasonably informed about the status of the matter;
    (4) promptly comply with reasonable requests for information; and
    (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

11

a.     Respondent violated Rule 1.4 by failing to communicate with Middleton and other Plaintiffs after filing the *Complaint*, despite repeated calls and emails to Respondent

b.     Respondent violated Rule 1.4 by failing to notify his clients that a *Motion to Dismiss* was filed in their lawsuit;

c.     Respondent violated Rule 1.4 by failing to notify his clients that the lawsuit was dismissed.

53.     **W.R.Prof.Cond. 3.1** (Meritorious claims and contentions) provides:

(a) A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

(b) The signature of an attorney constitutes a certificate by him that he has read the pleading, motion, or other court document; that to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

a.     Respondent violated Rule 3.1 by filing a lawsuit asserting a federal private cause of action for Food, Drug, and Cosmetic Act violations when no such cause of action exists.

b.     Respondent violated Rule 3.1 by failing to withdraw or amend the *Complaint* after the United States Supreme Court reversed the injunctions against enforcement of the Centers for Medicaid and Medicare Services ("CMS") vaccine

12

mandate and found that CMS had the statutory authority to require hospitals who were covered entities under Medicare and Medicaid to require all employees to be vaccinated against COVID-19 or have a recognized exemption.

54.    **W.R.Prof.Cond. 3.3** (Candor toward the tribunal) provides in pertinent part:

A lawyer shall not knowingly:

    (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

    (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

a.    Respondent violated Rule 3.3(a)(1) by failing to inform the Court that a federal private cause of action for Food, Drug, and Cosmetic Act violations does not exist when he filed his *Complaint* alleging a violation of the Act on behalf of his clients who are private citizens.

b.    Respondent violated Rule 3.3(a)(1) by failing to inform the Court that a federal private cause of action for Food, Drug, and Cosmetic Act violations does not exist after Respondent received Cave's January 25, 2022 letter advising him of the same.

c.    Respondent violated Rule 3.3(a)(1) by failing to inform the Court of the relevant case law, i.e., *Biden v. Missouri,* 142 S. Ct. 647 (2022), after the *Biden* decision was issued on January 13, 2022.

55.    **W.R. Prof.Cond. 3.4(c)** (fairness to opposing counsel), states, "A lawyer shall not... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists...." Further, the

13

Federal Rule of Civil Procedure 11 (Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions) states in pertinent part:

> **(a) Signature.** Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.
>
> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> > **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

a.     Respondent violated Rule 3.4(c) by filing a *Complaint* with frivolous and unsupported claims.

b.     Respondent violated Rule 3.4(c) by failing to withdraw the *Complaint* after *Biden v. Missouri,* 142 S. Ct. 647 (2022) was decided

c.     Respondent violated Rule 3.4(c) by failing to withdraw or amend the *Complaint* after receiving Cave's January 25, 2022 letter advising him of the inability to file a private right of action under the Food, Drug, and Cosmetic Act and informing Respondent of the *Biden* decision.

d.     Respondent violated Rule 3.4(c) by failing to withdraw or amend the *Complaint* after the *Motion to Dismiss* was filed.

14

e. The frivolous *Complaint* and refusal to withdraw the same violated Fed. R. Civ. P. 11, which in turn violated Rule 3.4(c). Respondent's actions caused harm to the opposing party because they had to incur fees to defend a lawsuit unsupported by any legal authority.

56. **W.R.Prof.Cond. 8.1(b)** (Bar admission and disciplinary matters) provides:

> An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not...
>
> > (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

Respondent violated Rule 8.1(b) by failing to respond to the OBC's requests to respond to BPR 2022-049 and BPR 2022-052.

57. **W.R.Prof.Cond. 8.4(d)** provides, "It is professional misconduct for a lawyer to ... (d) engage in conduct that is prejudicial to the administration of justice."

a. Respondent violated Rule 8.4(d) when he filed a frivolous Complaint.

b. Respondent violated Rule 8.4(d) by failing to participate in the lawsuit after filing the lawsuit, thus harming his clients, and thus, members of the public and their perception of the legal system.

c. Respondent violated Rule 8.4(d) by requiring the opposing parties to incur fees to defend a lawsuit unsupported by any legal authority; and

b. Respondent violated Rule 8.4(d) by wasting judicial resources on a frivolous lawsuit.

15

58.  **W.R.Prof.Cond. 15(b)(3)(D)** provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:"

   a.  Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

   b.  Whether the lawyer acted intentionally, knowingly, or negligently;

   c.  The amount of the actual or potential injury caused by the lawyer's misconduct; and

   d.  The existence of any aggravating or mitigating factors.

59.  <u>First Factor: The Duty Violated.</u> Respondent's violations of Rule 3.3(a)(1) and (2) fall within Standard 6.1, "False Statements, Fraud and Misrepresentation."

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:

6.11  Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

6.12  Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

6.13  Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer is negligent either in determining whether the statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal system, or

16

causes an adverse or potentially adverse effect on the legal proceeding.

6.14 Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether the submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.

60. <u>Second Factor: The Lawyer's Mental State.</u> The Preface to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

61. <u>Third Factor: Actual or Potential Injury.</u> Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

62. <u>Fourth Factor: Aggravating and Mitigating Factors.</u> ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

17

9.1    *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2    *Aggravation*

9.21   *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22   *Factors which may be considered in aggravation.* Aggravating factors include:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.

9.3    *Mitigation.*

9.31   *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32   *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse; and
(m) remoteness of prior offenses.

9.4     *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;
(b) agreeing to the client's demand for certain improper behavior or result;
(c) withdrawal of complaint against the lawyer;
(d) resignation prior to completion of disciplinary proceedings;
(e) complainant's recommendation as to sanction; and
(f) failure of injured client to complain.

## RECOMMENDATION

Based upon the foregoing findings of fact and conclusions of law, the Hearing Panel recommends to the Court as follows:

1.     For violation of W.R.Prof.Cond. 1.1, and pursuant to ABA Standards 3.0, and 4.51, the Court should order disbarment of Respondent. The Hearing Panel found no

19

mitigating factors, but did find that evidence of a pattern of conduct and prior acts of discipline, both of which are aggravating factors.

2. For violation of W.R.Prof.Cond. 1.3, and 1.4, and pursuant to ABA Standard 4.41, the Court should order disbarment of Respondent. The Hearing Panel found, under Standard 4.41(b) a knowing failure to provide services to the client that caused serious injury to the client, and under (c) a pattern of neglect that causes harm. No factors of mitigation were found by the panel, but the pattern of neglect is an applicable aggravating factor.

3. For violation of W.R.Prof.Cond. 3.1, and pursuant to ABA Standard 6.22, the Court should order suspension of Respondent. The Hearing Panel found knowing, but not intentional conduct by Respondent. No mitigating factors were found and aggravating factors are the same as above.

4. For violation of W.R.Prof.Cond. 3.3(a)(1), and pursuant to ABA Standard 6.22, the Court should order suspension of Respondent. The Hearing Panel found knowing, but not intentional conduct by Respondent. No mitigating factors were found and aggravating factors are the same as above.

5. For violation of W.R.Prof.Cond. 3.4(c), and pursuant to ABA Standard 6.22, the Court should order suspension of Respondent. The Hearing Panel found knowing, but not intentional conduct by Respondent. No mitigating factors were found and aggravating factors are the same as above.

6. For violation of W.R.Prof.Cond. 8.1(b), and pursuant to ABA Standards 7.2, and 8.0, the Hearing Panel recommends that suspension is appropriate for knowing conduct under ABA Standard 7.2; however, as under ABA Standard 8.1, disbarment is

20

appropriate due to prior disciplinary matters that were the same or of a similar nature and that caused harm. No mitigating factors were found and aggravating factors are the same as above.

7.    For violation of W.R.Prof.Cond. 8.4(d), and pursuant to ABA Standard 6.12, the Court should order suspension of Respondent. The Hearing Panel found knowing, but not intentional conduct by Respondent. No mitigating factors were found and aggravating factors are the same as above.

8.    The Hearing Panel recommends that disbarment begin as of the date the Court signs the Order.

9.    Order Respondent to pay an administrative fee of $750.00 as well as properly certified costs of this proceeding to the Wyoming State Bar.

Dated this __1__ day of ____June____, 2024.

_____
Debra J. Wendtland (WSB No. 5-2700)
Hearing Panel Chair
Board of Professional Responsibility
Wyoming State Bar

21